United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Madam Clerk and I are struggling over that line. I'm a former trial court judge and it's an old habit. I keep saying, please be seated and stepping on her line. Well, everybody sat down. I think we're okay. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, Alaska. We're sitting today in Portland. I'm delighted to have my colleague on my right, your left, Carlos Bea, whose chambers are in San Francisco, and my colleague from Phoenix on my left, your right, is Judge Desai. We have a couple cases on the calendar that are submitted, so I need to start with that and then we'll move on to oral argument. The submitted cases are 20-73250 Cruz-Nolasco v. Bondi, 23-1371 Mendoza-Rodriguez v. Bondi, The first case on the oral argument calendar is Rojas-Pino v. Bondi, 24-6105. Counsel, if you give me one minute to stop shuffling papers, we'll get a better recording. Absolutely. Thank you. Okay. I think we're all set. Good morning, and may it please the Court. My name is Shannon Murphy, and I represent the petitioners, lead petitioner Mr. Rojas-Pino and the two co-petitioners, Mr. Rojas-Pino's partner and their minor child. May I reserve two minutes for rebuttal? Certainly. Thank you. Petitioners respectfully request this Court remand the instant petition for review for two reasons. First, the agency committed legal error in concluding that lead petitioner did not establish nexus to a protected ground. And second, the Board engaged in impermissible fact-finding when it affirmed the immigration judge's non-existent nexus finding as to the co-petitioners. And to my first point, the Board committed legal error when it affirmed the immigration judge's finding that lead petitioner did not establish nexus to a protected ground. Throughout the entire individual hearing, lead petitioner consistently testified to harm that he experienced at the hands of guerrilla groups in Colombia and Panama. And the IJ found him credible? Yes, Your Honor, the IJ did find lead petitioner credible throughout his entire testimony. And lead petitioner joined the Colombian military in 2007 and remained as a member of the military through 2011. Now, you would agree that there are other portions of the testimony that connect the harm to personal retribution, correct? Absolutely, Your Honor. So can you explain why the record compels the conclusion that the former military status was a reason for persecution? Yes, Your Honor. So the case that is currently before this Court is very similar to the case in Madrigal v. Holder, where the initial harm that was committed against lead petitioner was because of his military status and continued after he left the military. This Court acknowledged that there could be retribution alongside a animus towards a protected ground. But throughout the record, the petitioner would not have been harmed but for his membership in the military. And when he left the Colombian military, there was continued attacks towards petitioner, through which petitioner credibly testified was done. Yes, because the guerrilla groups were frustrated that he did not join them when he was in the military, but also because petitioner grew up in the Choco region where these guerrilla groups operate. And petitioner had extensive knowledge from his time in the military and knew an extensive amount about this extremely valuable region for these guerrilla groups. So I think your argument is kind of, there's a couple things packed in there, as I understand it. And one is that it's not just, his claim is not just based on actions he took while a member of the military, but the fact that he has this training and experience and that's, he didn't unlearn that. He still has that. That's the first thing that I think you're packing in there. And then I think the second, but I may have misheard you, is I think you have to be, if this is a mixed motive case, that's my shorthand. I think you have to be arguing that the record compels the conclusion that there are two motives, not just one. But I want to make sure I'm not misstating your theory. Yes, Your Honor. So we are arguing that there can be two motives within this case, right? Yes, there can be a motive where… That's not the standard, counsel. Forgive me for interrupting, but I think you have to be arguing that the record compels the conclusion that there are two. And it's not a trick question. I just want to make sure I understand you. Yes, Your Honor. We are arguing that the record compels the conclusion based on the credible testimony evidence and the documentary evidence that shows that there is a significant intertwining between the guerrilla groups and the military groups in Colombia. And there is the concern here within the record, though, that's not necessarily about asking this court to find that it compels the conclusion. But we are also asking this court in the alternative to remand to the immigration judge, to the board, and then the board to the immigration judge because there are errors in the immigration judge's nexus analysis. When we look at the immigration judge's nexus analysis for past persecution on pages 51 and 52, the immigration judge only discussed the harm that occurred from 2007 through 2011. This is an alternative argument that you're making, correct? What did the court overlook? What happened after 2011? Yes, Your Honor. So after 2011 is when the lead petitioner left the military. After he left the military, that is actually when the threats and the physical attacks escalated. And it's important here to really discuss how these events happened because in the immigration judge's decision, the immigration judge said that the brunt of the harm occurred before the lead petitioner left the military. Right there, now, I think there's an inconsistency. And again, I know I'm interrupting, but just to be clear, I thought you were just telling us that one error is that the IJ didn't consider anything that happened after he left the military. But now you're telling us that the IJ said the brunt of the harm happened earlier, which implies that they looked at the whole course of events. Respectfully, that's not what the record indicates, Your Honor. What's your theory? How do you read the record is what I'm trying to ask. Yeah, absolutely, Your Honor. So we read the record that the immigration judge did not consider events that happened after January 2012. And there were physical altercations that happened between 2015 and 2016. And there were continued threats that were made to petitioner when he left Colombia all the way through 2021. But the immigration judge specifically mentioned in the past persecution analysis just the harm from 2007 through 2011. So where do you put the evidence where someone stopped him long after he left the military and said, I'm paraphrasing, but, you know, we sort of know where to find you and you owe us a debt. How do you is it your contention, first of all, that the IJ did not consider that because of the specific temporal limitation in the in the persecution? The IJ only considered that in terms of well-founded fear future persecution. The IJ did not apply that to past persecution. And so that's really where the it seems like a splitting of a hair. But these additional attacks that occurred against petitioner, these additional threats are critical because had the immigration judge considered them in regards to past persecution, there was a cognizable particular social group. There was a finding of past harm amounting persecution. So it is very possible that the petitioner could have been afforded the rebuttable presumption, which would have completely changed the well-founded fear analysis. And so that's why petitioners are respectfully requesting that if this court does not find that the record compels the conclusion as it stands, petitioners would ask that this court remand the record to the agency so that the proper analysis can be conducted in the first place. And I think the most important really authority comes from Diaz versus Bondi, where this court says that if there is any misconstruing within the record, remand is necessary so that the proper record can be before this court. And to my second point, the board did engage with impermissible fact finding when it concluded that the co-petitioners did not establish nexus to a protected ground. If we look to the record at page 56 to 57, the immigration judge did not address nexus to the co-petitioners, nor did the immigration judge discuss the motives. The immigration judge discussed that there was no reasonable possibility of future harm, but that doesn't address the nexus question. And when the board adopted under matter of Burbano, the immigration judge's decision is what this court should look to. And without that nexus finding, it's impossible to understand. Can I stop you there and just check to see if we have any other questions? Not at this point. Would you like to reserve? If there are no further questions, I would like to reserve, please. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. I am Shelley Clemons on behalf of the Attorney General. May it please the Court, this Court should deny the petition for review for the reasons that have been addressed today. First, Lee Petitioner has failed to establish that any past persecution or a well-founded future persecution would occur on a protected ground. And second — I'm going to ask you the same question that I asked your friend on the other side, which is, do you agree that there is evidence in the record to suggest both that the basis or the motive for the persecution of Petitioner was because he was formerly a member of the military, and also that there was comments made about personal retribution? I do not agree with that analysis, Your Honor. Why not? Didn't the I.J. find the Petitioner credible? The I.J. did find Petitioner credible. And didn't he testify specifically to knowing the area and being able to serve as a guide of the area? He testified that he had certain type of training that he received and knowledge that were fundamental to the guerrillas because of his membership in the military previously? Yes. Okay, so that's evidence, correct? That is evidence. And there's evidence in the record as to these points, which are something more than just retribution. Then I'm not understanding how you can disagree with the premise that there are at least two motives in the record that suggest the basis for persecution. Well, first we have kind of a temporal issue, which the I.J. recognized. At the time that they were initially recruiting him, they wanted him to join their group because he had this knowledge that was favorable to — that they believed would be favorable to them. But at that point, he was not, quote, a member of our former employee of the military. Did he lose the information that he once had from being a member in the military? Well, we're talking about from 2011 to 2018, which is kind of our span of when this all occurred. But when that occurred, at that point they were interested in him joining the military. What changed, what made it personal retribution was when he refused to join their group. And at that point, all the language they used against him when discussing the threats and when they — their acts of harm were indicating their frustration and anger with him because he would not join. You raise an interesting point and one that I'd like to also ask you about, which is the I.J. seemed to be really focused on the comments, the oral statements that were made by the persecutors. But we don't have to rely solely on the comments made by the persecutors to determine what the motive was for the persecution, correct? So his testimony can also serve as a basis for the motive? Yes, his testimony was what they said to him. And their persecutor's statements is relevant evidence, often the best proof of what someone's motive is. And in this case, they repeatedly said, for instance — But again, counsel, you're focusing on what they said and I'm focusing on what the petitioner testified about. Right. And so his testimony is — goes beyond simply the comments that they made, which were that they are seeking retribution. So their statements might be — I'm not disagreeing with you that there is evidence in the record with respect to retribution. My question really relates to the fact that there is evidence in the record for both motives.  So — OK, so you agree with me. I don't agree. OK, so let's assume for purposes of this question that there is evidence in the record with respect to both motives. For the government to prevail, substantial evidence must support the conclusion that petitioner was persecuted for retribution alone. And I'm really struggling to understand how that can be the case if there's evidence in the record with respect to both motives. Well, actually, I believe the test would be the petitioner would have to demonstrate in a mixed motive situation that the mixed motive, the protected ground, was one central reason or a reason. Well, no, no, no, that it's one — that it is a reason. So for withholding — Well, that's the holding of removal, but — OK, and that's what I'm talking about. I'm talking about for the withholding claim, all that he would need to show is that it is a reason, not a central reason. So let's talk about the withholding claim. Do you agree with that? Yes, that would be the proof that he would have to show. But in this case, we did not have any threats of harm, any claims that they were going to hurt him until after he refused to join them. And their language, their proof of what their motive was, what they told him and what he testified to, was that they were angry that he did not join them. For instance, when they went to his mother's home, they said that he — she had to leave within 20 minutes. Ms. Howell, are you familiar with the case Garcia-Martinez v. Ashcroft? Yes. OK, so in that case, our court said, and I'll quote, to rely solely upon and insist that an asylum applicant be bound by a persecutor's own statements regarding motive would be patently unreasonable. So you continue to argue that we need only look at the statements that are coming out of the mouths of the persecutors to determine their motive. And that's just simply wrong under our case law. But we also have to rely — this court is bound, we're all bound, by what's on the record. And what's in the record in this case is the country conditions evidence and the petitioner's testimony. And the petitioner's testimony, while, yes, they did initially want him to join the group because they were interested in his military expertise and what he knew about the region, they did not persecute him. It did not turn to animus until after he refused. And they're continuing anger towards him from 2011 when he left until 2018 or 19 when he finally left Panama. Everything indicated that they were angry, that they were going to go after him because he refused to join. That is personal retribution. So is your contention that there is no evidence in the record suggesting that they continued to try to recruit him? Well, I'm not saying that, but aggressive recruitment — I think you have to, and I just want — I'm not trying to trick you. I think you have to if your answer to Judge Desai's question is that it's all just about him refusing to join while he was still in the military. I just want to know if you're — maybe you know the record better than I do. And I can certainly scour it. But my question is, I thought I recalled that there were some attempts or that he testified, petitioner testified, that they were still — had still approached him not just out of retribution, but also to try to get him to continue to cooperate with them after he left the military. Do I have that wrong? You have that correct, Your Honor, and I do agree with that. They were angry with him because he wouldn't join, and they were still trying to get him to join. So on that point, since they were still trying to get him to join, and this goes to the — I mean, you have a unique case here. I don't think this is a floodgate situation. He's got — there's these actions he took while he was in the military, but he's also got this knowledge of the local area, of the jungle area. And they're still trying to get him to join up. So why isn't that a mixed motive? Because when we're talking about nexus, we're talking about the group in question, the persecutors that want to punish or overcome his status as a former military officer, or they have animus towards the officer's group, and that's not the case here. Petitior had absolutely no problems with the Elmer Cardenas guerrilla group until he refused their — and continued to refuse their request that he join his group. And that's what kind of switches that from that to personal retribution. Animus is nexus against an entire group, and that's where the medical case kind of becomes important. We actually have kind of a different social group here than we have there in that case with you here. In that case, we had an individual who was threatened by Los Zetos due to his actions as a military member, taking down a large number of members of the cartel. And I think those cases are — there's a bright line there. Those cases seem to me to be much simpler than this one. And there are cases that are sort of in between. There are cases where the BIA has recognized, for example, someone who was quite socially visible for a particular role in the military, like guarding the president's kids, being the family guard, sort of the palace guard, so to speak. I don't know if those fit here, but this person wasn't sort of just a member of the military. He's arguably not just being persecuted because of actions he took then, but because he's got this special knowledge of this cartel's neighborhood, of this jungle, this particular area. What about that? Well, I disagree with that because by their language, by their actions, while they may have still wanted him to join, their anger against him, why they were persecuting him was because he refused to join. That's one reason, and I think Judge Tye has been really clear we understand that reason. We're trying to explore whether it's a mixed motive case. Could you speak to the other motive, which is still not retribution, but still trying to get him to join because of the knowledge he presently possesses? Which then goes to the tie between the persecution and the reason. This is certainly, at the most, aggressive recruitment, but as the Board said in the matter of SEG, aggressive recruitment is not persecution on a counter-protective ground. What we have here instead is a situation where they are angry with him, and that's why they want to persecute him, not because they want him to join, but because he won't join. Don't you think they're trying to coerce him when they kick him in the stomach? Yes. And the court in this case presumed that all the actions rose to the level of persecution without making a specific motive. And the persecution was directed towards getting him back in the military or getting him to join them and tell them about the military. Yes, although there were other incidents in 2018 and 2019, but they're – and I'm sorry, my time has run out. It's okay if I can finish. Thank you. But the instance where he kicked him in the stomach, I believe that was at the mother's house in early 2012, and at that point they still believed that he was a member of the military. So at that point that's not part of his membership in his proposed particular social group, which is that he's a former member of the military. They wanted to get him out of that class of former military people and become a guerrilla. Which is not the class that he raised. I think that's a reasonable way of getting kicked in the stomach, right? Yeah. Thank you, counsel. Okay. Well, we have a few minutes. Madam Clerk, could you put two minutes on the clock for rebuttal? Thank you. Thank you, Your Honor. One note on rebuttal. As Judge Desai noted, there is evidence compelling two different types of motives. One is, of course, yes, admittedly there was some retribution for not joining the ranks of the guerrillas. But two, there was motive that the guerrillas were moved by their desire to recruit Lead Petitioner as his status as a former member of the military. And I think when we really look at the record of the testimony, and we step really close into what Petitioner testified to credibly, at page 148 and at page 164 Petitioner testified that the guerrillas wanted him to join them because of the training he received as a member of the military and because of the knowledge that he had. Couple that with the record evidence at 220 and 317 that shows the extensive working between the government, the guerrillas, and the military. And that compels the conclusion that the guerrillas were motivated by Lead Petitioner's membership in the military formerly. If there are no further questions. There are. I just have one. The BIA noted that he had originally, he started out with four PSGs, right? And the BIA reached, affirmed that one of them was not cognizable. But by your read, did the BIA reach the other three or just two of the other three? Our read is that the BIA did reach the other three and that the BIA then rested on the nexus determination. Okay. Judge Baird, did you have a question? I thought I, nope, okay.
judges: BEA, CHRISTEN, DESAI